```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICKEY MILES                      :    CIVIL ACTION
                                  :
         v.                       :
                                  :
ARAMARK CORRECTIONAL SERVICES,    :
   INC., et al.                   :    NO. 06-1759
```

MEMORANDUM

Dalzell, J.                                       August 16, 2007

Defendants seek to enforce a provision of a Consent Order that would oblige us to close this civil action. Plaintiff contends that defendants are not entitled to this relief because they did not satisfy their obligations under that Consent Order.

## I.  **Factual Background**

Mickey Miles is an inmate at the Curran-Fromhold Correction Facility ("CFCF") in Philadelphia, Pennsylvania. On June 2, 2006, he sued Aramark Correctional Services, Inc. ("Aramark") and nine of its employees for allegedly failing to provide proper Kosher meal service during the 2006 Passover holiday.[1] His complaint seeks compensatory damages of $7,000,000

---

[1] Miles commenced this action as a pro se litigant, but we later appointed counsel through the Court's Prisoner Civil Rights Panel. We thank Hangley Aronchick Segal & Pudlin in general, and Michael Lieberman, Nina Russakoff, Shanon Levin and Matthew Hamermesh, Esqs., of that firm in particular, for their patience, professionalism, and exemplary work on behalf of their
(continued...)

from Aramark, and $2,500,000 jointly and severally against the other defendants, as well as punitive damages in the same amounts.  It bears noting that this is the ninth civil action that Miles has filed in this court since April of 2002.[2]

On March 28, 2007, we approved a Consent Order between the parties.  They agreed that "Defendants shall take all necessary steps to provide Plaintiff with three meals per day consisting exclusively of Kosher for Passover food, for a total

---

[1](...continued)
client.

[2] These cases, and their dispositions, are Miles v. Commissioner Thomas Castello, et al., C.A. No. 02-2108 (summary judgment granted defendants; aff'd, C.A. 03-4016 (3d Cir. Jan. 24, 2005)); Miles v. Aramark Corp., et al., C.A. No. 02-2354 (judgment for defendants after trial; appeal dismissed, C.A. 05-5566 (3d Cir. Nov. 30, 2006)); Miles v. Commonwealth of Pennsylvania, Misc. No. 02-131 (mandamus and equitable relief denied); Miles v. Dombrownski, et al., C.A. No. 02-6731 (still pending); Miles v. Fredric A. Rosemeyer, et al., C.A. No. 03-673 (dismissed as frivolous; appeal dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), C.A. 03-1625 (3d Cir. Feb. 11, 2004)); Miles v. Aramark Correctional Service, Inc., et al., C.A. No. 04-2030 (prior Passover dietary case, judgment as a matter of law for defendants after three-day trial, aff'd, 2007 WL 1170702 (3d Cir. Apr. 20, 2007)); Miles v. Thomas Thomaszewski, et al., C.A. No. 04-3157 (habeas dismissed; cert. of appealability denied, C.A. 04-4296 (3d Cir. Feb. 18, 2005)); and Miles v. John Wiser, et al., C.A. No. 05-183 (venue transferred to W.D. Pa.).  Though only one of these cases was dismissed as frivolous, thereby keeping Miles safe from the rigor of the "three strikes" rule of 28 U.S.C. § 1915(g), it will be observed that the Consent Order here represented the first time he achieved any affirmative relief in any of his cases.

of 25 Kosher for Passover meals during the Passover holiday," which extended from the evening of April 2, 2007 until the evening of April 10, 2007.  Consent Order ¶¶ 2 - 3.  Aramark agreed to provide a copy of the Consent Order to all CFCF employees who provided food to Miles.  Id. at ¶ 4.  If defendants did not provide meals of "exclusively" Kosher for Passover food, Miles's lawyers were to seek a telephone conference with the Court.  Id. at ¶ 5.  Finally, in paragraph six, the parties agreed that "[a]ssuming Defendants provide the [Kosher for Passover] meals in compliance with this Order, Plaintiff agrees to seek dismissal of this case under Local Rule of Federal Procedure 41.1(b) within 10 days after the end of the Passover holiday, or by April 20, 2007."  Id. at ¶ 6.

     Miles's counsel contacted the Court during Passover and requested a telephone conference.  On April 5, 2007, counsel for both parties participated in a telephone conference with Chambers staff.  Miles's counsel reported that Aramark had served Miles non-Kosher items -- namely, bread, margarine, and fruit drink and Wawa-brand iced tea with corn syrup.  Defendants' counsel conceded that on the first full day of Passover, Aramark mistakenly served Miles a plastic-wrapped piece of bread on his food tray.  Defendants' counsel also explained that Aramark could

not purchase Kosher margarine because it did not meet the universal menu requirements prescribed in Aramark's contract with the City. As to beverages, he represented that Miles had refused milk that was in fact Kosher, and that Aramark would provide Kosher orange juice.[3]

Aramark maintained a log that documented the meals it served to Miles during Passover. See Defs.' Ex. A, Meals Log (Handwritten and Typed Transcribed Copies).[4] The log, which bears Miles's signatures acknowledging his receipt of the meals, as well as his refusal of certain items because he deemed them non-Kosher, confirms the representations that counsel made during the conference call with Chambers staff. For instance, the log reveals that Miles refused margarine on April 4 and 5, 2007 and

---

[3] It is undisputed that Miles always had access to water from the faucet. Defendants' counsel said Aramark was not permitted to serve bottled water for security reasons, i.e., inmates would melt the plastic to make weapons.

[4] Miles contends that Aramark also kept an "alternative log." Miles Decl. ¶¶ 6-7. In response to a subpoena requesting a copy of this log, the "Daily Special Diet Sign In Sheet" for Mickey Miles, the records custodian for the Philadelphia Prison System submitted only a copy of the log Aramark provided to the Court. See Pl.'s Ex. C Pl.'s Subpoena, Ex. D Defs.' Resp. to Subpoena. Miles does not allege that the information recorded in this alleged second log differed in any material respect from the log defendants submitted. Thus, even assuming Miles's allegation of an "alternative log" is true, it is immaterial.

milk on April 3, 4, 5, 6, and 7, 2007.  The log also records that Miles accepted orange juice at breakfast on April 3, 2007, but then at lunch and dinner he refused juice.  On April 4, 2007, he refused orange juice, two Wawa iced teas, and two orange drinks.  The next day he refused orange juice at breakfast and dinner, but not at lunch, and he also refused iced tea at dinner.  For the rest of Passover he accepted the orange juice that he received up to three times a day.

Miles explains that he refused the milk because it was not marked Kosher, Kosher-Dairy, or Kosher for Passover.  Miles Decl. ¶ 5, June 18, 2007.  Wawa, Inc. provides Aramark with the milk and juice Aramark serves to inmates, and defendants have submitted evidence that these beverages are indeed Kosher.  The Orthodox Jewish Council's Kosher Technical Konsultants provided Wawa a Kosher certification stating that all of Wawa's dairy products are certified Kosher-Dairy, "do not contain any forbidden substances according to HALACHA (Jewish Talmudic Law) and may be used by the most observant without any reservation." See Defs.' Ex. B Kosher Certification of Rabbi Silver, M.D. Also, all juice products not containing grape juice are certified Kosher for year-round use, including for Passover.  Id.  The

certification states that all new packaging must show the Shield Star KD (dairy designation) seal.  Id.

As to the other beverages he refused, Miles contends that the fruit drinks and iced tea were not marked Kosher for Passover and contained corn syrup in their ingredient list. Miles Decl. ¶ 4.  As evidence that corn syrup is not Kosher, he submits an excerpt from a question and answer session from a Web site that provides information about Judaism.  See Pl.'s Ex. E Ohr Somayach Web site, "Ask The Rabbi" (complete URL and date not given).  That excerpt explains that Ashkenazic Jews refrain from eating corn during Passover, and Sephardic Jews eat it if it is not mixed with wheat.  Id.  While the Consent Order stipulates that Miles "sincerely subscribes to the religious tenets of Judaism," Consent Order ¶ 1, it does not specify whether he is Ashkenazic or Sephardic.

Miles also points out that the log does not record that Aramark served him bread as part of dinner on April 2, 2007. Miles Decl. ¶ 1.  He alleges that the employee said her superiors provided her the meal to serve him and that she knew the bread was not Kosher for Passover.  Id. at ¶ 3.  He further contends that on some unspecified day Aramark served him a regular Kosher -- not Kosher for Passover -- meal.  Id. at ¶ 9.  He asked the

Aramark employee to return that meal and provide him with a Kosher for Passover meal, which she did.  Id.

Miles did not seek dismissal of this case pursuant to paragraph six of the Consent Order.  Aramark and the individual defendants now move to enforce that provision and thereby close this civil action.

**II.  Legal Analysis**

Defendants contend that they are entitled to dismissal of this matter pursuant to paragraph six because Aramark acted in good faith and substantially complied with the Consent Order.  Although defendants did not bother to provide legal citations, they apparently invoke the doctrine of substantial performance:

> The equitable doctrine of substantial performance is intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars, so that their right to compensation may not be forfeited by reason of mere technical, inadvertent, or unimportant omissions or defects.  It is incumbent on him who invokes this protection to present a case in which there has been no willful omission or departure from the terms of his contract.

Morgan v. Gamble, 79 A. 410, 414 (Pa. 1911) (citation omitted).

Defendants stress that the record bears out Aramark's substantial compliance with the Consent Order during Passover in 2007. According to them, the "vast majority of foods" Aramark served complied with the Consent Order, and Miles never ate or drank any non-Kosher items. Defs.' Br. 4. They also assert that Miles's refusals of milk and orange juice were unwarranted because, as Aramark's supplier certified, those beverages were in fact Kosher. They admit, however, that Aramark served Miles separately wrapped margarine packets that were not Kosher, as well as plastic-wrapped bread on the first day of Passover.

Miles, in turn, asserts that defendants are not entitled to the doctrine's benefits because Aramark did not "substantially" comply with the Consent Order, has not proven that it acted in good faith, and in fact failed to perform on the contract at all since it did not fully comply with its obligation to take "all necessary measures" to provide the Kosher for Passover food.[5] In support, Miles cites Aramark's admissions

---

[5] Miles also makes two arguments as to why the doctrine does not apply in this type of case. He first contends that substantial performance is a doctrine of contract law and thus inapplicable because this matter concerns the violation of a federal court order. However, counsel for both parties had endorsed the Consent Order on behalf of their clients before submitting it to us, and the parties had expressly "stipulate[d]
(continued...)

that it provided him with non-Kosher bread and margarine. He also contends that the milk he received did not bear the Kosher

---

⁵(...continued)
and agree[d]" to the Order's terms. See Consent Order. Thus, we may apply the principles of contract law and therefore the substantial performance doctrine. Cf. Harley-Davidson, Inc. v. Morris, 19 F.3d 142, 148 (3d Cir. 1994) ("For the purposes of enforcement, a consent judgment is to be interpreted as a contract, to which the governing rules of contract interpretation apply.").

To be sure, Miles's able counsel are correct that the doctrine of substantial performance seems not (at least in any reported decision) to have been applied to a prisoner case like this one. The litigation history of this prisoner, recounted in note 2, demonstrates beyond peradventure why it is eminently sensible to apply the doctrine to consent orders in prisoner cases. Judicial and party economy simply cannot afford to treat construction of such orders like disclosures under the Truth in Lending Act. As note 2 documents, Miles is, in any event, the least likely candidate for exemption from the substantial performance doctrine.

Miles also asserts that even if we interpret the Consent Order under contract law, the equitable doctrine of substantial performance does not apply because the contract's "clear and unambiguous" terms control. Pl.'s Resp. 5 (citing Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 468 (Pa. 2006), which provides that "[w]hen the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself.") Miles points out that Aramark admittedly did not serve "exclusively" Kosher food, thereby violating the agreement's "clear and unambiguous" terms. But even if Aramark did breach some of the Consent Order's clear terms, that does not foreclose the application of the doctrine of substantial performance. The doctrine applies where a party has in some manner departed from the terms of an agreement, but the materiality of the departure is in question.

We shall therefore consider whether the equitable doctrine protects the defendants here.

designation and that some fruit drinks and the iced tea contained the impermissible ingredient of corn syrup.

Aramark undisputedly served some non-Kosher items to Miles in the early days of Passover, but these omissions do not rise to the level of material breaches suggesting a willful departure from the terms of the Consent Order.  It is undisputed that, after the first twenty-four hours of Passover, Aramark did not repeat its mistake of serving bread to Miles, nor does Miles challenge Aramark's representation that the bread was separately wrapped in plastic.  Also, the rabbinical certification shows that the milk and orange juice Aramark served satisfied the Kosher for Passover requirement, and even if some of those drinks given to Miles did not bear the Kosher seal, there is no evidence on record that Aramark served anything other than the Wawa Kosher-certified milk and juice.  As for the once-served fruit drink and twice-served iced tea, Aramark stopped serving those early in Passover and provided Miles with orange juice every day but one.[6]  Finally, while the margarine was not Kosher for Passover, it was undisputedly a separately wrapped and sealed

---

[6] Also, Aramark may be forgiven for some confusion as to the proscription against corn syrup since the authority that Miles cites makes clear that consuming corn during Passover is not forbidden to all branches of Judaism.

condiment for which Aramark was contractually unable to provide a Kosher substitute.

In sum, the record shows that, despite some omissions, defendants endeavored in good faith to serve Miles three Kosher for Passover meals each day during the 2007 holiday and thereby satisfied their obligations under the Consent Order in all substantial particulars.  Having substantially performed their obligations, they are therefore entitled to the protection of the equitable doctrine that imports common sense into contract law and thereby conserves scarce judicial resources.  We shall enforce paragraph six of the Consent Order and close this case.

### III.  Conclusion

For the reasons discussed herein, we shall grant defendants' motion to enforce paragraph six of the Consent Order and dismiss this civil action with prejudice pursuant to Local R. Civ. P. 41.1(b) as that Consent Order specifies.  An appropriate Order and Judgment follow.

BY THE COURT:

/s/ Stewart Dalzell, J.

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICKEY MILES                        :     CIVIL ACTION
                                    :
        v.                          :
                                    :
ARAMARK CORRECTIONAL SERVICES,      :
    INC., et al.                    :     NO. 06-1759
```

ORDER

AND NOW, this 16th day of August, 2007, upon consideration of defendants' motion to enforce paragraph six of the Consent Order (docket entry # 37) and plaintiff's response thereto, and for the reasons articulated in the accompanying Memorandum, it is hereby ORDERED that:

    1.   Defendants' motion is GRANTED;

    2.   Pursuant to Local R. Civ. P. 41.1(b), this action is DISMISSED WITH PREJUDICE, without costs, nunc pro tunc to April 20, 2007; and

    3.   The Clerk shall CLOSE this case statistically.

                        BY THE COURT:

                        /s/ Stewart Dalzell, J.

```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICKEY MILES                          :     CIVIL ACTION
                                      :
        v.                            :
                                      :
ARAMARK CORRECTIONAL SERVICES,        :
   INC., et al.                       :     NO. 06-1759
```

JUDGMENT

      AND NOW, this 16th day of August, 2007, for the reasons articulated in the accompanying Memorandum and Order, JUDGMENT IS ENTERED in favor of defendants Aramark Correctional Services, Inc., Al White, Makeba, Fairfax, John Taylor, Celeste, Wendell Doe, Ms. K. Brown, Mr. Kinsey, Ms. R. Shaw and against plaintiff Mickey Miles.

                                BY THE COURT:


                                /s/ Stewart Dalzell, J.